# Fisher *versus* Rush.

1. Fisher, being life-tenant, leased to Harding for ten years, at a money rent, Harding also to take down an old building and erect a new one; the remaindermen agreed that the lease should continue during the term, although Fisher should die.   Rush erected the building and entered a lien for the erection and "alteration, repairing and improvement."   *Held*, 1. The lease was a contract with Harding for the erection of the building.   2. Fisher was the person in possession at the commencement of the building, at whose instance it was erected, and was within sect. 24, Act of April 28th 1840. 3. The Act of August 1st 1868 does not apply, the words "alteration, repairing and improvement" in the lien being surplusage.   4. The lien could be sustained.

[Fisher v. Rush.]

2. Rush took notes from Harding for the amount due him, on which judgment was recovered: *Held*, that the notes did not relieve the lien. Per STROUD, J.

February 8th 1872. Before AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No 33, to January Term 1871.

This was a scire facias issued December 17th 1869, on a mechanic's lien, by Jacob Rush against Eliza B. Fisher, owner, and John D. Brown and P. A. Harding, lessees and contractors.

The lien was filed June 11th 1869; the claim being for $8240.09, for work and materials for a three-storied building occupied by P. A. Harding & Co., on the lot No. 806 Arch street, Philadelphia; part being under a contract with the lessees and the other part according to the bill of particulars annexed to the claim at the request of P. A. Harding & Co., "for and towards the erection and construction, alteration, repairing of and improvement and on the credit of said building."

The contract referred to in the claim was between Jacob Rush and John D. Brown and P. A. Harding, dated October 31st 1868, by which Rush agreed to "take down and rebuild the old building on lot 806 Arch street. * * * Rush taking all the risk and furnishing all materials, and deliver the same to Brown & Harding on or before February 1st 1869;" Brown & Harding to pay Rush $7000 in monthly instalments, commencing on November 1868, and ending in July 1869.

The "bill of particulars" mentioned in the claim was for counters, shelving, heaters, &c., amounting to $1243.09. A case stated was filed by which it was agreed that Samuel H. Fisher, being the owner of the premises, died in 1865, having by his will given to his wife the said Eliza B. Fisher, defendant, all his real estate for life, and directed that on her death it should be distributed under the intestate laws of this Commonwealth. He left his widow and seven children to survive him. Mrs. Fisher, by lease dated June 15th 1868, let the premises to P. A. Harding for ten years, from the 1st of August then next, he "paying for the same unto the said Eliza B. Fisher, for and during the full term of her life, then to Jeremiah Smith, for the benefit and use of the heirs of Samuel H. Fisher, deceased, who have the remainder of the property under the will of Samuel H. Fisher, the yearly rent or sum of fifteen hundred dollars, in monthly payments as therein expressed, and further improving the said property and keeping the same fully insured as hereinafter stipulated and covenanted.

"And also that the said P. A. Harding, &c., will on the commencement of the term of this lease, begin to prepare for the removal of the building now erected on the said lot of ground. And as soon as arrangements can be made will commence and finish as

[Fisher *v.* Rush.]

speedily as possible the erection of a new store building on the said lot, of which the front portion shall be at least three stories in height. * * * The said building shall be substantially erected and well finished, and shall be adapted to the millinery goods or dry goods business, and shall never be used for the manufactory of anything in which machinery is employed, whereby the building may be in any way injured or the value of the property lessened. The front of the said building is to be of as good material as pressed brick, and finished in an ornamental manner. Gas-pipes are to be placed in all of the rooms, and the necessary flues are to be constructed."

The children of the testator, who would take under the intestate laws on the death of Eliza B. Fisher, afterwards agreed that in the event of her death before the lease should expire, Harding should hold the premises until the end of the term. Harding entered into partnership with Brown, and assigned to him an undivided part of the lease, Brown binding himself to pay half the rent and jointly to perform the other covenants. Harding & Brown then entered into the contract set out in the mechanic's claim as before stated. Rush, in pursuance of the agreement, took down the house on the premises and erected another according to his contract, "and under and by virtue of the covenant in the lease."

On the 28th of January 1869, Harding & Brown assigned the lease to Thomas Woods, as collateral security for three notes, amounting in all to $5613.25.

Nothing remained of the old building but the western party-wall, part of the foundation wall, and bricks of the old building. On its completion the building was delivered to Harding & Brown, the contract having been fully complied with by Rush; and all the mechanics and material-men having released Rush : up to July 19th 1869, Brown & Harding had paid Rush $3827.50. On the 12th of May 1869, Brown & Harding gave to Rush five notes of about equal amounts, payable in three, five, seven, nine and twelve months respectively, amounting in all to $3375.66. They gave him also a note for $1400, on which they paid him $221 on the 19th of July 1869; all these notes had been passed away by Rush, had been dishonored and taken up by him, and were still owing, except the $221. On two of them judgment had been obtained by Rush's endorsee against Harding & Brown; the judgment was unsatisfied and had been marked to the use of Rush. Shortly before December 1869, Harding and Rush agreed that the payments made should be first applied to the payment of the bill of $1243.09, for counters, shelving, &c.; the notes of May 12th 1869 were given under an agreement with Harding & Brown that they should not discharge the building, but were received only as collateral, and were to discharge the lien only when paid;

[Fisher v. Rush.]

at the same time Harding & Brown were notified that the lien would be entered before the expiration of six months: they subsequently informed Rush that they could not pay the notes and directed the lien to be entered.

Woods went into the possession of the premises under his above-mentioned assignment, between June and November 1869, with notice of the foregoing facts, and in this scire facias he was duly served as terre-tenant. In 1870 he purchased all Harding & Brown's right at sheriff's sale.

It was also agreed by the case that "if the court should be of the opinion that the plaintiff is not entitled to maintain this lien, then judgment to be entered in favor of the defendants; but if the court should be of the opinion that said plaintiff is entitled to judgment, then judgment to be entered for the plaintiff. If the court should be of the opinion, that notwithstanding the agreement relating to the appropriation of the payments, first to the payment of the $1243.09 for counters, shelving, &c. ; said payment must be applied to the $7000 contract, then all the payments, viz., $3827.50, to be credited on the $7000 contract, and the judgment be liquidated at $3173.50, with interest from May 12th 1869. If the court should be of the opinion that the receipt of Harding & Brown's notes, selling or transferring them, and judgments thereon against Harding & Co., entitled the defendants to claim a credit therefor, then the judgment to be entered for the defendants; and should the court be with the plaintiff on all the points, then judgment to be entered for plaintiff for $4415.50, with interest from May 12th 1869.

The court, Stroud, J., entered judgment for the plaintiff for $3486.47, "the whole of his claim, exclusive of the $1243.09, the amount stated to be the value of the counter and shelving."

The defendant terre-tenant took a writ of error.

No assignment of errors appeared on the paper-book.

*G. S. Selden,* for Woods and *J. B. Roney,* for Fisher, plaintiffs in error.

*F. S. Simpson* and *G. H. Davis,* for defendants in error.

The opinion of the court was delivered February 15th 1872, by Sharswood, J.—The lease by the plaintiff in error to Harding was in this instance a contract by him to erect the building. He was to be paid, not in money, but in the term for years of the premises; the increased rent would be his until the termination of the lease, when it would enure to the benefit of the life-tenant and owners in fee. It is clear that Mrs. Fisher was "the person in possession at the time of commencing the said building and at whose instance it was erected," and so within the letter as well as spirit and intention of the Act of April 28th 1840, sect. 24,

[Fisher *v.* Rush.]

Pamph. L. 474. The case is not distinguished from Woodward *v.*
Leiby, 12 Casey 437 ; Leiby *v.* Wilson, 4 Wright 63 ; Hopper *v.*
Childs, 7 Id. 310.

It is equally clear that the provisions of the Act of August 1st
1868, Pamph. L. 1168, do not apply. That act is specially con-
fined to debts contracted "in or about the repair, alteration or
addition to any house." The claim filed in accordance with the
fact is for a debt contracted, "for and toward the erection and con-
struction" of the building. Although the words "alteration and
repairing of and improvement" are added, they are evidently
mere surplusage and cannot change the character of the lien.

Judgment affirmed.